361 F.2d 276
 The FIRST HARDIN NATIONAL BANK and the Farmers Bank of Vine
Grove, Kentucky, Plaintiffs-Appellants,
v.
FORT KNOX NATIONAL BANK, Defendant-Appellee, and James J.
Saxon, Comptrollerof the Currency of the United
States, Intervening Defendant-Appellee.
 No. 16906.
 United States Court of Appeals Sixth Circuit.
 May 26, 1966.
 
 L. A. Faurest, Elizabethtown, Ky., for appellant First Hardin Nat. bank.
 H. L. James, Elizabethtown, Ky., for appellant Farmers Bank of Vine Grove, Ky.
 Robert E. Hatton, Louisville, Ky. (Robert E. Hatton, L. Lyne Smith, Jr., Louisville, Ky., on the brief), for Fort Knox Nat. Bank.
 Jack H. Weiner, Atty., Dept. of Justice, Washington, D.C. (John W. Douglas, Asst. Atty. Gen., David L. Rose, Atty., Dept. of Justice, Washington, D.C., Ernest W. Rivers, U.S. Atty., Louisville, Ky., on the brief), for James J. Saxon.
 Robert Matthews, Atty. Gen. of Kentucky, John B. Browning, Asst. Atty. Gen., Frankfort, Ky., on the brief for Commissioner of Kentucky Dept. of Banking, amicus curiae.
 Before WEICK, Chief Judge, and O'SULLIVAN and CELEBREZZE, Circuit judges.
 CELEBREZZE, Circuit Judge.
 
 
 1
 The First Hardin National Bank, a National Banking Corporation, and The Farmers Bank of Vine Grove, a State Banking Corporation, hereinafter referred to as Appellants, instituted this action to enjoin the Fort Knox National Bank, hereinafter referred to as Appellee, from opening a branch bank at Radcliff, Hardin County, Kentucky. James J. Saxon, Comptroller of the Currency of the United States, intervened on behalf of the appellee.
 
 
 2
 Appellee is a National Banking Corporation, with its principal office located upon the Fort Knox Military Reservation. Fort Knox was established and is now operated and controlled by the United States. The State of Kentucky consented to the acquisition by the United States of the Fort Knox Military Reservation, and did not retain any right of any kind in or upon the land acquired by the United States for so long as the same shall remain the property of the United States.[1]
 
 
 3
 Pursuant to 12 U.S.C. Section 36(c),[2] Appellee sought to establish a branch bank at Radcliff, Hardin County, Kentucky. The Comptroller of the Currency investigated Appellee's application and on April 15, 1965 gave preliminary approval. At the time this suit was instituted, Appellee had not asked for a certificate of authority to open the branch, and one has not yet been granted.
 
 
 4
 A National bank, with the approval of the Comptroller of the Currency of the United States, may establish and operate a branch at any point within the State where the State authorizes the establishment and operation of a State bank.[3] The statute law of Kentucky, KRS 287.180(2) provides:
 
 
 5
 'Any corporation presently or hereafter engaged in the business of banking, and meeting the requirements of this subsection, may apply to the Commissioner of Banking for permission to establish, within the city in which its principal office is located and, subject to the limitation hereinafter imposed, within the county in which its principal office is located or in an adjacent county, in which there is no existing bank a branch at which all of the powers conferred in subsection (1) of this section may be exercised. * * * ' (b) No such corporation shall be permitted to establish a branch in any incorporated city, other than in the city in which its principal office is located or in any adjacent county, in which there is an existing bank. Nor shall any such corporation be permitted to establish a branch in any unincorporated area within a radius of one mile of an existing bank located in such unincorporated area. As used in this subsection, an 'existing bank' shall mean the principal office of a bank as distinguished from a branch thereof.'
 
 
 6
 Here the Appellee, located upon the Fort Knox Military Reservation, is attempting to establish a branch bank, outside the Reservation, at Radcliff, Hardin County, Kentucky. It is conceded there is no principal office of any bank in Radcliff, and that Appellee has its main office on a part of Fort Knox which was a part of Hardin County at the time of its acquisition by the United States.
 
 
 7
 The sole issue presented is whether that part of Fort Knox, which was part of Hardin County, at the time it was acquired by the United States with the consent of Kentucky, is a part of Hardin County as the word 'county' is used in the Banking Act of Kentucky. Appellee and the Comptroller of the Currency urge that it is, and the District Court so found.
 
 
 8
 This Court held in Community National Bank of Pontiac v. Saxon,310 F.2d 224 (C.A.6, 1962) that the Comptroller has 'the initial responsibility of determining whether the several conditions under which a National banking association may establish a branch are met'. The scope of judicial review is limited, and the factual findings of the Comptroller will not be overturned unless they are arbitrary, capricious, or otherwise not in accordance with law. In that case the Court held that the finding of the Comptroller that the area in which the defendant bank sought to establish a branch was a village as required by the Michigan statute was essentially a finding of fact and his decision was conclusive since it was reasonably supported by substantial evidence.
 
 
 9
 The principle has been well established that a military reservation within a state remains a geographical part of the city, county and state of which it was part at the time of acquisition by the United States. In Howard v. Commissioners of the Sinking Fund of the City of Louisville, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), the City of Louisville, Kentucky annexed certain federally owned land on which a naval ordnance plant was located. The Appellants in that case argued that the City could not annex this federal area because it had ceased to be a part of Kentucky when the United States assumed exclusive jurisdiction over it. In holding that the geographical structure of Kentucky remained the same, the Supreme Court stated:
 
 
 10
 'When the United States, with the consent of Kentucky, acquired the property upon which the Ordnance Plant is located, the property did not cease to be a part of Kentucky. The geographical structure of Kentucky remained the same. In rearranging the structural divisions of the Commonwealth, in accordance with the state law, the area became a part of the City of Louisville, just as it remained a part of the County of Jefferson and the Commonwealth of Kentucky.'
 
 
 11
 In the instant case, upon conveyance to the United States, the State of Kentucky relinquished its jurisdiction over the area conveyed. Under the terms of the conveyance, the loss of jurisdiction was not absolute. The interest of Kentucky in the land conveyed became dormant, and will remain dormant so long as the land conveyed remains the property of the United States. When the United States ceases to own the land conveyed, jurisdiction will be reactivated in the State of Kentucky. The geographical structure of the State of Kentucky not only remains the same, but the State retains a dormant jurisdiction over the land.[4]
 
 
 12
 Appellees contend that 'county' involves geography, and argue that geographically the part of Fort Knox which had been a part of Hardin County at the time of conveyance is still a part of Hardin County.
 
 
 13
 Appellants contend that when the Kentucky legislature used the word 'county' in KRS 287.180(2) it used it to designate a political entity, and did not use the word 'county' as a geographic term.
 
 
 14
 A political subdivision must of necessity have geographic boundaries-- the political aspect dealing with the right to govern, the geographic boundaries dealing with the physical layout of the land area, and consequently a limitation of jurisdiction. The State of Kentucky merely relinquished its political control over the area so long as the property is owned by the United States Government, but did not relinquish its geographical boundaries.
 
 
 15
 Therefore, for the purposes of the Banking Act it became a question of fact for the Comptroller to determine, and the finding of the Comptroller that the part of Fort Knox upon which Appellee is located is part of Hardin County as required by Kentucky statute, is a factual finding reasonably supported by substantial evidence.
 
 
 16
 Judgment of the District Court is affirmed.
 
 
 
 [1]
 KRS 3.030 provides: 'Jurisdiction over Military Post (Fort Knox) at West Point Ceded. Kentucky cedes to the United States all the rights and jurisdiction which she now possesses over the land and premises in the vicinity of West Point, Kentucky, conveyed or to be conveyed to the United States for the purposes of establishing a permanent camp of instruction and military post, so long as the same shall remain the property of the United States.'
 
 
 [2]
 12 U.S.C.A. Section 36(c) provides as far as applicable here: 'A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State Banks by the law of the state in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication of recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.'
 
 
 [3]
 12 U.S.C. Section 36(c)(2)
 
 
 [4]
 Under Section 63 of the Kentucky Constitution, the Kentucky General Assembly did not exercise its authority to abolish Hardin County. Section 65 of the Kentucky Constitution provides that there shall be no territory stricken from any county unless a majority of the voters living in such territory shall petition for subdivision. We are unable to determine from the record whether either one of these two provisions was complied with