In the Matter of the Arbitration between RONALD E. BEAGLE, Appellant, and MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Respondent.

Fourth Department, October 27, 1966.

*Oot & Fallon* (*Timothy D. Lockwood* of counsel), for appellant.

*Bond, Schoeneck & King* (*John Ferguson* and *Charles T. Major* of counsel), for respondent.

WILLIAMS, P. J. The question for decision is whether an accident which occurred on the Griffiss Air Force Base, a United States Air Force installation near Rome, New York, caused by a hit-and-run driver, can be the basis of recovery by the injured petitioner against MVAIC. The Special Term Justice permanently stayed arbitration under CPLR 7503 (subd. [b]).

The facts are undisputed. Petitioner was a United States airman attached to the Griffiss Base. He was an "insured" under the terms of his father's New York State automobile liability insurance policy, which contained the standard MVAIC endorsement. That endorsement provided: "This endorsement applies only to accidents which occur within the State of New York."

The Special Term Justice upheld the respondent's contention that the air base was a Federal enclave and, for the purposes of construction of the policy and the Motor Vehicle Accident Indemnification Corporation Law, was not a part of the State of New York.

On the 27th day of July, 1950, then Governor Thomas E. Dewey, in accordance with State law, ceded the tract in question to the United States of America, subject to the terms and conditions of sections 52 and 53 of the State Law. These sections were contained in the document of cession. Section 53 provides: "The said jurisdiction so ceded shall be upon the express condition that the state of New York shall retain a concurrent jurisdiction with the United States on and over the property and premises so conveyed, so far as that all civil and criminal process, which may issue under the laws or authority of the state of New York, may be executed thereon in the same way and manner as if such jurisdiction had not been ceded, except so far as such process may affect the real or personal property of the United States."

Not only was section 53 contained in the document, but by separate recitals its substance was incorporated therein. The language of the statute and deed indicates that the territory, jurisdiction over which New York ceded to the Federal Government, did not cease to be a part of New York. Generally, process can be served only within the territorial limits of the State. Had the property been completely removed geographically from the State, service of process therein would have been ineffective.

The problem here does not involve the power of a State to assert its jurisdiction over a Federal enclave, as was the case in *Howard* v. *Commissioners* (344 U. S. 624) and *Arapajolu* v. *McMenamin* (113 Cal. App. 2d 824). The question, rather, is a geographical one. The law is clear that Federal enclaves do not cease to be a geographical part of a State. The "fiction of a state within a state" has found little favor with the courts (*Howard* v. *Commissioners, supra* p. 627). A recent Pennsylvania case (*Brennan* v. *Shipe*, 414 Pa. 258) involving facts practically identical with the present, held that the Commonwealth encompassed all territory within its geographical borders and that this included any Federal enclave located therein.

In *Matter of Kernan* (247 App. Div. 664, affd. 272 N. Y. 560), this court held that a habeas corpus proceeding by a mother to obtain custody of her daughter who lived with her father, an officer of the United States Army stationed at Madison Barracks, was properly within the jurisdiction of the Supreme Court of the State of New York, although neither party was a citizen or resident of the State of New York. The father had contended that the proceeding could be brought only in Federal court. The opinion stated (p. 665): "A court having jurisdiction of the subject-matter may inquire into the custody, control and cause of detention of any child found within its territory. * * * When the Federal government acquires territory from one of the States, it takes it subject to all of the laws of the State which apply to the ceded territory at the time of the cession, which are not contrary to Federal laws. The situation so continues until such time as the Federal Congress shall pass laws inconsistent with the State law. (*Kaufman* v. *Hopper*, 220 N. Y. 184; *McCarthy* v. *Packard Co.*, 105 App. Div. 436; affd. on opinion below, 182 N. Y. 555; *Barrett* v. *Palmer*, 135 id. 336; *Chicago, R. I. & P. R. Co.* v. *McGlinn*, 114 U. S. 542.)"

The most recent pronouncement on this general subject of concurrent State control is contained in the *First Hardin Nat. Bank* v. *Fort Knox Nat. Bank* (U. S. Court of Appeals, 6th Cir., 361 F. 2d 276.) There the court said (pp. 278–279) that: "The sole issue presented is whether that part of Fort Knox, which was part of Hardin County at the time it was acquired by the United States with the consent of Kentucky, is a part of Hardin County as the word 'county' is used in the Banking Act of Kentucky. * * * The principle has been well established that a military reservation within a state remains a geographical part of the city, county and state of which it was part at the time of acquisition by the United States. * * * The geo-

graphical structure of the State of Kentucky not only remains the same, but the State retains a dormant jurisdiction over the land." It was determined that the State had not relinquished its political boundaries.

The respondent takes the very broad position that MVAIC coverage applies only to accidents occurring on the public highways of the State of New York. If this were so, an accident happening off the technical bounds of a highway as, for instance, in a shopping center adjacent to the highway, would not be covered. This assumes an extremely narrow construction which flies in the face of the obvious intent of the Motor Vehicle Accident Indemnification Corporation Law.

" The MVAIC Law was designed to afford a person injured in such an accident the same protection as he would have had if he had been injured in an accident caused by an identifiable automobile covered by a standard automobile liability insurance policy in effect at the time of, and applicable to, the accident. In the declaration of purpose in section 600 of the statute, it is explicitly stated, that ' The legislature determines * * * that the public interest can best be served by closing such gaps in the motor vehicle financial security act [by creating the MVAIC] '." (*McCarthy* v. *Motor Vehicle Acc. Ind. Corp.*, 16 A D 2d 35, 38.)

We conclude that the accident is covered under the MVAIC endorsement of the policy.

The order of Special Term should be reversed and the motion to permanently stay arbitration should be denied.

BASTOW, GOLDMAN, HENRY and MARSH, JJ., concur.

Order unanimously reversed, without costs of this appeal to either party and motion denied, without costs.