Daniel A. SCHIAPPA, Sr., Plaintiff,

v.

**BROOKHAVEN SCIENCE ASSOCIATES, LLC, Defendant.**

No. 04–cv–04963 (ADS)(WDW).

United States District Court, E.D. New York.

Dec. 12, 2005.

Brian K. Saltz, Esq., Farmingdale, NY, Zabell & Associates, P.C., by Saul D. Zabell, Esq., of Counsel, Bohemia, NY, Co-counsel for Plaintiff.

Proskauer, Rose, LLP, by Edward Cerasia, II, Esq., Christie Del Rey–Cone, Esq., of Counsel, Newark, NJ, Attorneys for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This is a case brought by Daniel A. Schiappa, Sr. ("Schiappa" or the "Plaintiff") against his former employer the Brookhaven Science Associates, LLC ("BSA" or the "Defendant") alleging employment discrimination based on age and disability. Schiappa contends that this discrimination resulted in a hostile work environment, wrongful termination, and refusal to rehire. Presently before the Court is a motion pursuant to Federal Rule Civil Procedure 12(c) for partial judgment on the pleadings.

### I. BACKGROUND

According to the amended complaint, filed on March 14, 2005, Schiappa was employed by BSA as technician in the Technical Support Group of the Magnet Division at Brookhaven National Laboratory ("BNL"). The BNL is a research facility that has been operated by BSA since March 1, 1998, pursuant to a contract between the BSA and the United States Department of Energy ("DOE"). The amended complaint alleges that BSA is a corporation formed by the State University of New York at Stony Brook and "Battelle" to operate the laboratory. However, the answer denies this allegation and states that BSA is a private, not-for-profit, limited liability company organized under the laws of the state of Delaware.

Schiappa was born on June 6, 1947, and commenced employment at the BNL in 1981 and continued working there for approximately twenty-two years. According

to the amended complaint, beginning in 1999, Schiappa and other "disabled and older employees" were subjected to both harsher and unsafe working conditions as compared to younger and healthier workers. Such harsh treatment included segregating older and injured employees and placing them in jobs which were substantially more strenuous, unpleasant, and dangerous. As a result, it is alleged that the older and injured employees were subjected to hazardous and debilitating conditions such as extreme heat and cold, danger of electrocution, and exposure to radioactivity, without being provided proper equipment, protection or monitoring.

The Plaintiff further alleges that he, along with other employees, complained about these dangerous conditions, but that they were ignored and retaliated against. As a result, the Plaintiff states that many workers were injured, forced to quit, or fired. The Plaintiff was allegedly injured twice due to the unsafe working conditions. In December 2001 and May 2003, Schiappa injured his back on the job and sustained injuries including herniation, stenosis, hypertrophy, and a bulging disc, that resulted in substantial pain and loss of movement and strength.

According to the amended complaint, not only were there unsafe working conditions for older and injured employees, but the safety issues extended beyond the boundaries of the BNL. In one instance, the Plaintiff alleges that the Defendant knowingly permitted radioactive materials to be unsafely shipped by truck across the country, and, as a result, radioactive materials spilled out of the truck over wide public areas.

In January 2003 the Plaintiff received a poor performance evaluation, which he informally protested. On July 11, 2003, the plaintiff received a notice that he was being terminated. At the time of the termination notice, the Plaintiff claims that he had the most seniority and was one of the oldest employees in his group. Shortly after receiving the notice, the Plaintiff applied for and was denied a different position. On July 31, 2003, he was terminated from his employment at BSA. In October 2003, Schiappa applied for and was denied another position at BSA.

In this lawsuit Schiappa contends that he was unlawfully subjected to a hostile work environment, terminated from his employment, and not rehired based on retaliation, age, and disability. Schiappa asserts causes of action under the Age Discrimination in Employment Act, the Rehabilitation Act, and the New York Human Rights Law. The Plaintiff also states that his case is "pursuant to 42 U.S.C. § 1983."

On May 4, 2005, the Defendant filed an answer and a motion for partial judgment on the pleadings. Although the amended complaint fails to allege that a charge of discrimination was filed with an administrative agency, attached to the Defendant's answer is a copy of Schiappa's March 25, 2004, charge of discrimination that he filed with the Equal Employment Opportunity Commission ("EEOC"). In the charge, he complains that he was discriminated on the basis of age when he was terminated in July 2003 as part of the BNL's reduction in force.

In its motion for judgment on the pleadings, BSA argues: (1) the hostile work environment claims under the Age Discrimination in Employment Act should be dismissed as time-barred because such claims arose more than 300 days before he filed a charge with the EEOC; (2) the retaliation claim should be dismissed because he failed to include such claim in the EEOC charge; (3) the Section 1983 claims should be dismissed because BSA is not a state actor and the claim is not adequately

plead in the complaint; and (4) the New York State Human Rights Law claims should be dismissed because they are barred by the federal enclave doctrine and the Constitution.

## II. *DISCUSSION*

### A. THE RULE 12(c) STANDARD

The standard of review on a motion for judgment on the pleadings under Rule 12(c) is whether "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Serv., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir.1995). Under Rule 12(c), all well-pleaded facts and allegations in the nonmoving party's pleading are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false.

■ This standard is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Labs.*, 850 F.2d 904, 909 n. 2 (2d Cir.1988). The function of the Court is not to weigh the evidence that may be presented at trial but instead the Court must determine if the claims are legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985); *see also King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999). Therefore, a court must evaluate whether the allegations in the complaint can sustain a cause of action under applicable law, and should grant the motion to dismiss only if the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager*

*Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

### B. AS TO THE CLAIMS OF AGE DISCRIMINATION

■ In order to state a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–34 (2005), a claimant must plead that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under "circumstances giving rise to an inference of discrimination." *Terry v. Ashcroft*, 336 F.3d 128, 137–138 (2d Cir.2003). Schiappa's complaint claims two adverse actions. A hostile work environment "beginning in 1999" and a wrongful termination, as of July 11, 2003.

■ BSA contends that Schiappa's hostile work environment claim is time-barred for failing to file a charge of discrimination with an administrative agency. The Court agrees. Under the ADEA, an aggrieved person must file a claim with the EEOC within 300 days of the discriminatory action. See 29 U.S.C. §§ 626(d)(1), (d)(2), 633(b). If the conduct complained of in the complaint falls outside of the 300-day period, the person can recover for that conduct only if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period. *Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir.1999). Claims for a hostile work environment, which may involve a series of acts not actionable on their own, may properly include acts outside the 300-day period for purposes of establishing a hostile environment "[p]rovided that an act contributing to the claim occurs within the filing period." *National Railroad Passenger Corp.*

*v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Schiappa filed his EEOC charge on March 25, 2004. As such, any alleged conduct that took place 300 days before that day, which is May 29, 2003, is time-barred unless he can demonstrate that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300-day period. Here, all of the discrete acts listed in the complaint with regard to hostile work environment fall outside the 300-day period. Indeed, there are only two specific incidents—both involving his alleged on the job injury—that support Schiappa's claim of a hostile work environment listed in the amended complaint. The first occurred in December 2001 and the second occurred on May 7, 2003. Both events fall outside the 300-day period. The other assertions listed in the amended complaint amount to nothing more than vague and conclusory allegations of an alleged policy or practice, such as Schiappa's claim that disabled and older employees "were subjected to both harsher and unsafe working conditions."

Therefore, due to the lack of any specific allegation of conduct in the amended complaint falling within the 300 day limit, Schiappa cannot sustain a claim of hostile work environment as pleaded in the complaint. Accordingly, the Defendant's motion to dismiss Schiappa's claim of hostile work environment is granted.

## C. AS TO THE CLAIM OF RETALIATION

■■ The Defendant argues that the Plaintiff's cause of action for retaliation under the ADEA should be dismissed because Schiappa failed to include it in his EEOC charge. "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A,* 274 F.3d 683, 686 (2d Cir.2001) (citing *Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir. 2000)). However, the Second Circuit has recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Shah v. New York State Dep't of Civil Serv.,* 168 F.3d 610, 614 (2d Cir.1999). "Reasonably related" claims are those which fall within the scope of the EEOC investigation and "would be reasonably expected to grow out of the charge of discrimination." *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397 1402–03 (2d Cir.1993). Claims alleging retaliation for filing a discrimination charge are "reasonably related" to the underlying discrimination charge if they are based upon conduct subsequent to the EEOC charge. *Legnani,* 274 F.3d at 686; *Shah,* 168 F.3d at 614 (quoting *Butts,* 990 F.2d at 1402).

■ However, in the present case, Schiappa filed his charge of discrimination with the EEOC after he was terminated. As a result, his claim of retaliation cannot be based upon or reasonably related to his filing of a charge of discrimination. In order for a retaliation claim to "relate back to a claim included in an EEOC charge, the alleged retaliation must occur after the filing of the charge." *Miles v. Florsheim Shoe Store Co.-Northeast,* No. 95–4280, 1997 WL 621258, at *1, n. 1 (S.D.N.Y. Oct.7, 1997). Because the Plaintiff's retaliation claim was neither included in the EEOC charge nor relates back to the claims that were included, this Court does not have jurisdiction over it. Accordingly, the Defendant's motion to dismiss the retaliation claim is granted.

### D. AS TO THE SECTION 1983 CLAIMS

The amended complaint states in the "Nature of Claim" section that Schiappa's claims are "pursuant to 42 U.S.C. § 1983." However, none of the four causes of action at the conclusion of the amended complaint mention Section 1983 and the amended complaint does not allege that BSA is a municipal or state entity acting under color of state law as required by 42 U.S.C. § 1983. *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir.1986); *Shaw v. Lopez*, No. 04 Civ. 0787, 2004 WL 1396698, at \* 2 (D.Conn. June 17, 2004). The only tangential reference to any state action in the amended complaint is Schiappa's allegation that BSA is a corporation formed by the State University of New York at Stony Brook and "Battelle" to operate the laboratory. Under Rule 8 of the Fed.R.Civ.P., this bare allegation alone is insufficient to state a Section 1983 claim. Accordingly, to the extent that the amended complaint alleged a cause of action under Section 1983, the motion to dismiss this cause of action is granted.

### E. AS TO THE STATE LAW CAUSES OF ACTION

Schiappa asserts two state law causes of action against BSA under the New York Human Rights Law ("NYHRL"). In response, BSA contends that the BNL, which it operates, is located in a federal enclave and that its operations at the BNL are not subject to state laws enacted after the land was deeded to the federal government. In support, BSA has attached as "Exhibit A" to its answer a Deed dated July 17, 1933 ("Deed") transferring jurisdiction over the land where the BNL is located from New York State to the federal government. The Plaintiff does not dispute the existence or validity of the Deed, or that following the transfer indicated on the Deed the land upon which the BNL is located became a federal enclave. Insofar as the Plaintiff does not dispute the Deed that was attached to the Defendant's pleading, the Court may properly considered it on a Rule 12(c) motion. *See* Rule 10(c); *Woodcock v. Montefiore Medical Center*, 48 F.Supp.2d 231, 233 (E.D.N.Y. 1999).

A federal enclave is "a portion of land over which the United States government exercises exclusive federal jurisdiction." *Kelly v. Lockheed Martin Servs. Group*, 25 F.Supp.2d 1, 2 (D.P.R.1998). When the United States acquires such a portion of land from a State, the laws of that State will remain in effect until abrogated by a federal law. *Id.* at 5. Thereafter, "a State may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States." *See Paul v. United States,* 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963).

Generally, under the federal enclave doctrine a state loses its police and legislative powers over the land acquired by the federal government if: "(1) the state consented to the land's acquisition or later ceded certain powers, (2) the federal government has assumed the ceded authority, and (3) the land's federal use is consistent with the enclave clause." *Torrens v. Lockheed Martin Services Group, Inc.,* 396 F.3d 468, 470 (1st Cir.2005). Here, rather than disputing whether the BNL is in fact a federal enclave, the Plaintiff disputes the nature and extent of the rights New York State reserved when it deeded the BSA land to the United States.

The question of what jurisdiction New York State reserved can be found by examining the Deed and the relevant provisions of New York law. The Deed expressly states that New York State retained

a concurrent jurisdiction with the United States on and over the property and premises as conveyed, so far as that all civil and criminal process, which may incur under the laws or authority of the state of New York may be executed thereon in the same way and manner as if such jurisdiction had not been ceded.

Def.'s Answer Ex. A.

The authority of the State of New York to cede jurisdiction over particular lands to the federal government is found in Articles 3 and 4 of the New York State Administrative Procedure Act ("State Law"). State Law § 52 is entitled "Governor may execute deed or release" and confers authority upon the Governor of the state of New York to cede jurisdiction over lands within New York's boundaries to the United States. N.Y. State Law § 53 (McKinney 2003). State Law § 53 is entitled "Concurrent Jurisdiction as to Service of Process." Section 53 states that jurisdiction ceded under Section 52

> shall be upon the express condition that the state of New York shall retain a concurrent jurisdiction with the United States on and over the property and premises so conveyed, so far as that all civil and criminal process, which may issue under the laws or authority of the state of New York, may be executed thereon in the same way and manner as if such jurisdiction had not been ceded.

N.Y. State Law § 53.

State Law § 53 was adopted by the New York State Legislature in 1909. This statute was in effect on July 17, 1933, remains on the books today, and reads now as it did when it was adopted nearly one hundred years ago. N.Y. State Law § 53. It is the Court's opinion that the language quoted above and appearing in a section of the New York laws entitled "Concurrent Jurisdiction *as to Service of Process,*" *id.* (emphasis added), was intended to do that

which its title suggests it was enacted to do—limit the scope of a transfer of jurisdiction from New York to the United States only with respect to the service of process.

The reservation of concurrent jurisdiction only for "service of process" permits New York to exercise civil and criminal jurisdiction over persons within the federal enclave, but in no way confers authority for the state to exercise legislative or police powers within the federal enclave. This conclusion is consistent with Supreme Court precedent. In *Ft. Leavenworth R. Co. v. Lowe,* 114 U.S. 525, 533, 5 S.Ct. 995, 999, 29 L.Ed. 264 (1885), the Supreme Court stated that "[t]he reservation which has usually accompanied the consent of the states that civil and criminal process of the state courts may be served in the places purchased, is not considered as interfering in any respect with the supremacy of the United States over them, but is admitted to prevent them from becoming an asylum for fugitives from justice." *Id.; accord James v. Dravo Contracting Co.,* 302 U.S. 134, 146, 58 S.Ct. 208, 82 L.Ed. 155 (1937) (noting that such reservations are "not incompatible with a cession of exclusive jurisdiction to the United States" and that reservations of this sort were frequently found in grants made by the states to the United States "in order to avoid the granted places being made a sanctuary for fugitives from justice"); *see also Celli v. Shoell,* 995 F.Supp. 1337, 1341–42 (D.Utah 1998) (refusing to interpret Utah's retention of jurisdiction as allowing anything more than the right to have its process served on the federal enclave); *People v. Dowdell,* 109 Misc.2d 605, 606, 440 N.Y.S.2d 528, 529 (N.Y. County Ct.1981) ("reservation [in N.Y. State Law § 53] relating to service of process . . . is to insure the continued integrity of the State system to administer its laws and to gain jurisdic-

tion over appropriate individuals properly subject to State actions or proceedings"); *Beagle v. Motor Vehicle Accident Indemnification Corp.*, 44 Misc.2d 636, 254 N.Y.S.2d 763, 765 (N.Y.Sup.Ct.1964), *rev'd on other grounds*, 26 A.D.2d 313, 274 N.Y.S.2d 60 (4th Dep't 1966) (reservation in N.Y. State Law § 53 relates to service of process); 87 N.Y. Jur.2d Public Lands § 5 n. 18 (same).

■ Because New York State retained jurisdiction only with respect to service of process, the only operative state laws within the BSA federal enclave are those that were in effect at the time the transfer was made in 1933. *See Vasina v. Grumman Corp.*, 644 F.2d 112, 117 (2d Cir.1981); *see also Paul*, 371 U.S. at 265, 83 S.Ct. 426, 9 L.Ed.2d 292; *Stewart & Company v. Sadrakula*, 309 U.S. 94, 100 & n. 9, 60 S.Ct. 431, 434, n. 9, 84 L.Ed. 596 (1940)("Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area."); *Celli*, 995 F.Supp. at 1341–42 ("subsequently enacted state laws have no application"); *Stokes v. Adair*, 265 F.2d 662, 665 (4th Cir.1959) ("It is ... clear that only the state laws in effect at the time of the transfer of jurisdiction continue in effect and that subsequent statutes of the State are not part of the laws of the ceded area unless Congress takes action to keep them current.").

The NYSHRL was enacted in 1945, twelve years after the BSA land became a federal enclave. Therefore, the NYSHRL does not apply on this federal enclave and is not enforceable as to BSA operations at the BNL. *See Hutchinson v. Andrulis Corp.*, No. 5:03CV1–MCR/WCS, 2004 WL 691790 (N.D.Fla. Mar.19, 2004) (adopting magistrate judge's report and recommendation that Florida's whistleblower statute was inapplicable to an individual employed on a federal enclave); *Miller v. Wackenhut Servs.*, 808 F.Supp. 697, 700 (W.D.Mo. 1992) (dismissing the plaintiff's claims under Missouri anti-discrimination statutes because the plaintiff was employed on a federal enclave).

Accordingly, the Court grants the Defendant's motion to dismiss the Plaintiff's NYSHRL claims against BSA. As a result, the sole claim remaining in the complaint is the one for alleged unlawful termination under the ADEA.

## III. CONCLUSION

For all the above reasons, the Defendant's motion for partial judgment on the pleadings is granted as follows: it is hereby:

**ORDERED**, that the Defendant's motion to dismiss the hostile work environment claim is GRANTED; and it is further

**ORDERED**, that the Defendant's motion to dismiss the retaliation claims in the first cause of action is GRANTED; and it is further

**ORDERED**, that the Defendant's motion to dismiss the Section 1983 cause of action is GRANTED; and it is further

**ORDERED**, that the Defendant's motion to dismiss the New York State law **causes** of action in the second and fourth causes of action is GRANTED; and it is further

**ORDERED**, that the motion to stay discovery pending the resolution of this motion is DENIED as moot; and it is further

**ORDERED**, that the parties are directed to contact United States Magistrate Judge William D. Wall forthwith to schedule the completion of discovery.

**SO ORDERED.**