**HARRY F. ORTLIP COMPANY OF PENNSYLVANIA**

v.

**ALVEY FERGUSON COMPANY.**

Civ. A. No. 32068.

United States District Court
E. D. Pennsylvania.

Nov. 29, 1963.

Harry J. Bradley, Lewis Weinstock, Philadelphia, Pa., for plaintiff, La Brum & Doak, Philadelphia, Pa., of counsel.

John P. Mason, Philadelphia, Pa., for defendant.

KRAFT, District Judge.

This case presents important questions concerning rights claimed by an unpaid sub-subcontractor against the prime contractor under a Government contract.

Defendant, as prime contractor, entered into a supply contract with the United States Navy Purchasing Office to supply necessary services, labor and material for an automated materials handling system at the Naval Supply Depot, in Philadelphia. Defendant subcontracted a portion of this installation to Electro Nuclear Systems Corporation (Electro) which in turn, entered into a contract with plaintiff to furnish work and material in connection with the subcontract. Plaintiff has fully performed its contract with Electro, and upon the failure of Electro to pay the balance claimed by plaintiff to be due, the plaintiff brought this action against defendant as prime contractor.

Presently before us is defendant's motion for summary judgment.

Plaintiff asserts in Count 1 that defendant failed to furnish the bonds required by the provisions of the Miller Act, 40 U.S.C. § 270a et seq., for the benefit of suppliers of subcontractors, and claims defendant is liable to plaintiff for such failure.

Defendant relies upon a waiver of the bond, as specifically provided for in the Act. 40 U.S.C. § 270e. It avers in its supporting affidavit that "the contract did not require that defendant furnish a bid bond or a bond to secure payment by a surety to sub-subcontractors or suppliers or subcontractors," and no such bonds were furnished.

In its opposing affidavit, plaintiff denies "that the failure to require a bid bond or payment bond was in accordance with the authority granted by 40 U.S.C. § 270e"; and avers "that the contract was for electrical construction and that it provided for a fixed price."

In our view plaintiff attempts to inject issues not properly cognizable in this action. It is provided in 40 U.S.C. § 270e that the Secretary of the Navy, inter alia, may waive the furnishing of a bond with respect to certain designated types of contracts. It is not for us to say, at this juncture, whether the contract here involved fell within the provisions for waiver. The Secretary *did* waive the furnishing of a payment bond, and, under familiar principles, his action is not open to collateral attack. Hanson v. Hoffman, 113 F.2d 780, 791 (10th Cir. 1940).

Even if defendant did improperly fail to furnish the payment bond required by the Miller Act, it would not be liable to plaintiff, a sub-subcontractor, with whom it had not contractual relations. Seaboard Surety Co. v. Standard Acc. Ins. Co., 277 N.Y. 429, 14 N.E.2d 778, p. 780, 117 A.L.R. 658 (1938), relied on by plaintiff, does state:

"Where the general contractor fails to furnish such a bond, the laborers and materialmen who supply the subcontractors may sue the general contractor and recover from him.

Strong v. American Fence Const. Co., 245 N.Y. 48, 156 N.E. 92."

This statement, however, is the merest dictum, and is without support in the case cited. In the Strong case, the contractor expressly promised the Government to furnish, inter alia, a payment bond, but failed to do so. It was held that a *beneficiary* of the promise, a laborer or materialman for whose protection the promise was given, had a right of action for damages resulting from its breach. In the case at bar there was no promise to give a bond, and the Strong case is clearly not applicable.

In Gallaher & Speck, Inc. v. Ford Motor Company, 226 F.2d 728 (7th Cir. 1955), relied on by defendant, the facts were almost identical with those in the instant case. There, too, an unpaid supplier of a subcontractor sued a prime contractor who had not filed a bond. In its opinion affirming dismissal of the action, the Court of Appeals applied the War Powers Act which granted the president power to exempt certain contracts from the provisions of restrictive laws, including the Miller Act. However, the Court went on to rule that the dismissal was warranted, even were the War Powers Act inapplicable, stating (226 F. 2d p. 731):

"Plaintiffs insist that the case is controlled by the reasoning in Strong v. American Fence Const. Co., 245 N.Y. 48, 156 N.E. 92. There the contractor promised the Government that it would furnish bonds. However, it failed to do so. The Court of Appeals for New York held not that the plaintiffs had a right to sue upon a bond which had not been given, the contract having been broken in that respect, but that they were entitled to sue the contractor for breach of contract to supply the bond. In other words, the promise having been made for the benefit of the material men, under the venerable doctrine of Lawrence v. Fox, 20 N.Y. 268, the beneficiaries had a right to sue as persons for whose benefit the promise had been made.

But that is not our case. Here, no promise was broken; no tort committed; no implied agreement on the part of defendant is justified."

In Count 2 of the complaint, plaintiff avers that defendant is liable to plaintiff under the Miller Act for the amount which the subcontractor contracted to pay for the work and material furnished by plaintiff.

We find plaintiff's argument somewhat difficult to follow. Plaintiff states in its brief that "when a surety bond is furnished under the Act, it is merely additional security to the beneficiaries for performance of an obligation of the *principal*, which does not rest on whether or not the bond has been furnished" (emphasis plaintiff's). To the contrary, we think the prime contractor is under no obligation to a sub-subcontractor, with whom it has had no contractual relation, except that which the prime contractor undertakes when it furnishes a bond in accordance with the requirements of the Miller Act. The language of Cardozo, C.J., in Strong v. American Fence Const. Co., 245 N.Y. 48, 156 N.E. 92, p. 93 (1927) is adequate answer to plaintiff's contention. Speaking with reference to the predecessor of the Miller Act, he stated: "The statutory liability, which in turn is inseparably linked to the statutory remedy, assumes the existence of a bond as an indispensable condition. Till then, there is neither federal jurisdiction nor any right of action that can rest upon the statute."

We conclude that defendant's motion for summary judgment must be granted in respect of plaintiff's Miller Act claims.

Plaintiff further claims in Count 3 that plaintiff is entitled to an equitable lien upon all funds in defendant's possession which are payable to Electro, "under the circumstances of this case".

This contention brings us to what has aptly been described as a doubtful and darkly obscure area of the law. In Pearlman v. Reliance Ins. Co., 371 U.S. 132, Note 10, p. 136, 83 S.Ct. 232, p. 234, 9 L.Ed.2d 190 (1962), the Supreme Court spoke of "the difficulties inherent in phrases like 'equitable lien'." We are persuaded that both discussion and decision on this point can best await a full development of the facts. We do not consider, either, the question of the adequacy of remedies at law, suggested by the present pendency of attachment proceedings in the State Courts.

Count 4 charges defendant with fraudulent misconduct. We agree with defendant that plaintiff has failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that the circumstances constituting fraud "shall be stated with particularity". However, no motion appropriate to this failure is before us, and our examination of the entire record, together with the briefs of counsel, indicates that a somewhat involved situation may exist. We deem it advisable, therefore, to withhold consideration of the question until the facts have been fully developed.

Plaintiff contends in Count 5 that, by virtue of the acceptance by the United States of the bid and accompanying bid bond submitted by defendant in order to obtain the prime contract, defendant became obligated to make payment for all labor and materials supplied by plaintiff under the latter's subcontract with Electro.

We have already noted that defendant avers in its supporting affidavit that the contract did not require defendant to furnish a bid bond, and that no such bond was furnished. Plaintiff has not denied this averment. Moreover, plaintiff has not favored us with any supporting argument on this point, and our own research indicates its complete want of merit.

### ORDER

Now, November 29th, 1963, after due consideration, it is ordered that:

1. Defendant's motion for summary judgment be, and it is, granted as to Counts 1, 2 and 5 of the complaint, and judgment is entered for defendant as to those Counts.

2. Defendant's motion for summary judgment be, and it is, denied as to Counts 3 and 4 of the complaint.