FAERBER ELECTRIC COMPANY, INC., an Illinois corporation, and Great Lakes Construction Co., an Illinois corporation, Plaintiffs,

v.

ATLANTA TRI–COM, INC., a Georgia corporation, Contractors Surety & Fidelity Co., Ltd., a Nevada corporation, Raytheon Service Company, a Delaware corporation, Defendants.

**and**

UNITED STATES of America for the Use and Benefit of FAERBER ELECTRIC COMPANY, INC., an Illinois corporation, and Great Lakes Construction Co., an Illinois corporation, Plaintiffs,

v.

RAYTHEON SERVICE COMPANY, a Delaware corporation, Defendant.

No. 91 C 8341.

United States District Court, N.D. Illinois, E.D.

May 1, 1992.

William D. Lyman, Kathleen M. Judy, Bedrava, Lyman & Van Epps, Oak Brook, Ill., for Faerber Elec. Co. and Great Lakes Const. Co., Inc.

Leo Feldman, Edward Stuart Margolis, Judy Kien, Teller, Levit & Silvertrust, Chicago, Ill., for Atlanta Tri–Com, Inc.

Daniel I. Schlessinger, Thomas Peter Minnick, Chicago, Ill., for Raytheon Service Co.

Scott Skaletsky, Karen Ann Keefer, Skaletsky & Mannis, P.C., Chicago, Ill., for Contractors Sur. & Fidelity Co., Ltd.

### MEMORANDUM OPINION AND ORDER

HART, District Judge.

This case involves a contract with the Federal Aviation Administration for the construction of certain facilities at various airports. Defendant Raytheon Service Company contracted to do the work. Raytheon, in turn, subcontracted with defendant Atlanta Tri–Com, Inc. to perform certain runway work at O'Hare International Airport in Chicago, Illinois. Tri–Com subcontracted with plaintiffs Faerber Electric Company, Inc. and Great Lakes Construction Co., Inc. to perform part of this work. Tri–Com obtained a labor and material payment bond from defendant Contractors Surety & Fidelity Company, Ltd. There is complete diversity of citizenship and each plaintiff's claim against each defendant exceeds $50,000. All claims are state law claims except that one claim (which will be discussed further) is in part a federal claim under the Miller Act, 40 U.S.C. § 270a *et seq*. Presently pending is Raytheon's "summary judgment" motion to dismiss the three claims against it, Counts VII, VIII, and IX.

Prior to the taking of any discovery, Raytheon moved for summary judgment on the claims against it. Both Raytheon and plaintiffs represented in court that there was a discrete legal issue regarding the applicability of the Miller Act that could be resolved on undisputed facts, thereby enabling the parties to properly focus their discovery in this case. Since both of the parties involved indicated that a legal issue could be resolved without discovery, the

parties were permitted to proceed on the motion despite the unusual circumstance of there not yet being any discovery. Raytheon's motion, however, was not limited to the Miller Act claim. Raytheon also seeks summary judgment on the Count VIII equitable lien claim and the Count IX quantum meruit claim. Those claims, however, require the development of certain facts before they can be resolved. Plaintiffs' response as to those two claims will be treated as one pursuant to Fed.R.Civ.P. 56(f). Summary judgment on Counts VIII and IX will be denied without prejudice so that the parties may complete discovery as to those claims.

Three facts which the parties agree can be treated as uncontested for purposes of the present motion provide a sufficient basis for considering Raytheon's summary judgment motion on Count VII. The key facts are (1) the contract between Raytheon and the FAA had no express provision requiring Miller Act bonds; (2) the payment bond Tri–Com obtained from Contractors Surety is not a Miller Act bond; and (3) the Miller Act bonds Raytheon eventually obtained covered a period that would not include coverage for the work plaintiffs performed. All other facts alleged in the complaint will be assumed to be true as well as any representations made in plaintiffs' brief. While this is not the ordinary procedure for summary judgment, *see* Fed.R.Civ.P. 56(e), this case is before the court under special circumstances. Raytheon represented that it would seek summary judgment on a discrete legal basis only. The parties agreed to stipulate to certain facts so that the particular legal issue of what happens when no Miller Act bond is obtained could be addressed. To the extent Raytheon seeks to inject other factual issues into its motion, they will not be considered because plaintiffs have not yet had the opportunity for discovery. The facts assumed to be true for the present motion are as follows.

Plaintiffs satisfactorily completed work under their contract with Tri–Com. Tri–Com, however, has failed to pay plaintiffs for the work performed and Contractors Surety has not made payments under the bond. Raytheon's contract with the FAA is one to which the Miller Act applies, which ordinarily would require that Raytheon obtain performance and payment bonds, including a payment bond ensuring that Raytheon's subcontractors would pay the sub-subcontractors. The FAA, however, failed to expressly include a bond requirement in the bid documents or the written contract it entered into with Raytheon. This noncompliance with the Miller Act was not brought to the FAA's attention until after Tri–Com failed to make payments to plaintiffs. The FAA then amended the express language of the contract and Raytheon obtained Miller Act bonds covering further work. The bonds, however, did not cover the work already performed by plaintiffs. Nevertheless, plaintiffs provided Raytheon with timely notice under the Miller Act that plaintiffs had not received payment from Tri–Com.

Under the Miller Act, "[b]efore any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person,...." 40 U.S.C. § 270a(a). The Miller Act further provides:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual rela-

tionship express or implied with the contractor furnishing said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons.

(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit.

*Id.* § 270b.

As the Supreme Court has explained, the Miller Act was designed to provide an alternative remedy to the mechanics' liens ordinarily available on private construction projects. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 122 [94 S.Ct. 2157, 2161, 40 L.Ed.2d 703] (1974). Because "a lien cannot attach to Government property," persons supplying labor or materials on a federal construction project were to be protected by a payment bond. *Id.* at 121–22, [94 S.Ct. at 2161].

*J.W. Bateson Co. v. United States ex rel. Board of Trustees of National Automatic Sprinkler Industry Pension Fund,* 434 U.S. 586, 589, 98 S.Ct. 873, 875, 55 L.Ed.2d 50 (1978).

Raytheon contends that the Miller Act only provides a remedy as against the surety and under the payment bond. It contends there can be no remedy based on a payment bond where none was obtained. Plaintiffs contend that Raytheon was statutorily required to obtain the Miller Act bonds even absent the FAA expressly imposing such a requirement and that Raytheon is liable to the unpaid sub-subcontractors for failing to obtain the necessary bonds.

Consistent with the Miller Act, Count VII is labeled as being in the name of the United States for the use and benefit of plaintiffs. A number of theories, however, are asserted in this count. Plaintiffs refer to a direct cause of action for payment by Raytheon. Complaint Count VII, ¶ 34. Presumably, this means a claim under the Miller Act as they would have if a bond had been issued. Alternatively, plaintiffs refer to three other theories of recovery. *Id.* ¶¶ 35–37. Plaintiffs refer to a direct cause of action against Raytheon for failure to obtain the statutorily mandated bond (¶ 35); Raytheon being estopped from denying coverage (¶ 36); and Raytheon being a third-party beneficiary of the statutory provision (¶ 37).[1]

 Payment bond coverage under the Miller Act is limited to subcontractors and sub-subcontractors. There is no coverage for subcontractors of suppliers nor for contractors further down the line than a sub-subcontractor. *United States ex rel. Morris Construction, Inc. v. Aetna Casualty Insurance Cos.,* 908 F.2d 375, 377 (8th Cir.1990). As sub-subcontractors, plaintiffs would have had coverage under the required payment bond. It has been held that, where a bond exists, sub-subcontractors can sue the prime contractor directly;

---

**1.** The theories stated in each paragraph will be treated as subclaims and will be referred to by their paragraph number.

they are not limited to proceeding against the surety only. *United States ex rel. S.C.I. Construction Co. v. Gajic,* 684 F.Supp. 190, 191 (N.D.Ill.1988). *See also Morris,* 908 F.2d at 378–79 (upholding finding of liability against both surety and prime contractor). *S.C.I.* relies on the language of § 270b(a) as to having a right of action on the payment bond and giving notice to the prime contractor.

■ In the present case, there is no surety bond to sue upon. Absent the existence of a bond, there can be no claim under the statute. *See Arvanis v. Noslo Engineering Consultants, Inc.,* 739 F.2d 1287, 1290 (7th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985); *McDaniel v. University of Chicago,* 548 F.2d 689, 693–94 (7th Cir.1977) (*"McDaniel II"*), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978) (adopting reasoning of *McDaniel v. University of Chicago,* 512 F.2d 583, 585–86 (7th Cir.) (*"McDaniel I"*), *vacated & remanded,* 423 U.S. 810, 96 S.Ct. 20, 46 L.Ed.2d 30 (1975));[2] *Strong v. American Fence Construction Co.,* 245 N.Y. 48, 156 N.E. 92, 93 (1927) (Cardozo, C.J.) (holding Heard Act, the Miller Act's predecessor, inapplicable). *See also Universities Research Association, Inc. v. Coutu,* 450 U.S. 754, 777 n. 28, 101 S.Ct. 1451, 1465 n. 28, 67 L.Ed.2d 662 (1981). Therefore, ¶ 34 and ¶ 35 do not state a basis for recovery.

■ The Miller Act, though, is not a sub-subcontractor's only remedy; it may also pursue any common law or equitable remedy against the prime contractor that may exist independent of the existence of a bond, such as the quantum meruit and equitable lien claims that plaintiffs make in Counts VIII and IX. *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1539 (10th Cir.1987); *United States ex rel. Sun-*

*works Division of Sun Collector Corp. v. Insurance Co. of North America,* 695 F.2d 455, 458 (10th Cir.1982). It still must be considered whether plaintiffs' estoppel and third-party beneficiary theories state a basis for granting relief independent of the existence of a bond.

No case has involved the precise facts presently before the court. There are other cases in which prime contractors have failed to obtain the statutory bond, but those cases are factually distinguishable because the government expressly waived the bond requirement, *see Gallaher & Speck, Inc. v. Ford Motor Co.,* 226 F.2d 728, 730–31 (7th Cir.1955); *Harry F. Ortlip Co. of Pa. v. Alvey Ferguson Co.,* 223 F.Supp. 893, 894 (E.D.Pa.1963); the contract had expressly required the bond, *Strong, supra;* or the subcontractor was proceeding against someone other than the prime contractor, *Arvanis, supra* (claims against United States). There are, however, discussions of alternative grounds in these cases that may or may not be *dictum* and which tend to support Raytheon's position.

In *Arvanis,* subcontractors brought suits against the prime contractor who had defaulted on payment and who had also failed to obtain a payment bond. The subcontractors also sued the United States on various theories. The district court entered default judgments against the prime contractor and dismissed the claims against the United States, primarily on sovereign immunity grounds. The subcontractors appealed the dismissals of the claims against the United States. *See id.,* 739 F.2d at 1289.

In discussing the claim that the government had been negligent in failing to require a bond, the Seventh Circuit stated that the Miller Act "places no affirmative obligation on the government, and says absolutely nothing about what happens when

---

**2.** In *McDaniel I,* the Seventh Circuit held that the only express action under the Davis–Bacon Act was on the payment bond as provided in the Miller Act, 40 U.S.C. § 270b(a). The Seventh Circuit, however, also held there was a private right of action under the Davis–Bacon Act. The Supreme Court remanded for reconsideration of whether there was a private right of action in light of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *McDaniel II,* the Seventh Circuit again found there was a private right of action under the Davis–Bacon Act. That holding was overruled in *Coutu,* but the overruling does not undermine the *McDaniel I* holding that the Miller Act only provides for a direct claim on the bond.

the contractor fails to furnish a bond. The Act grants a very narrow and specific right to those in appellants' position: the right to sue on the bond (if there happens to be one) 'in the name of the United States for the use of the person suing.' 40 U.S.C. § 270b(b)." *Id.* at 1290. After holding the statute does not waive sovereign immunity, the Seventh Circuit stated the following which Raytheon relies upon.

> There does seem to be a gap in the statute; there is no provision for the contingency that both the contractor and the government contracting officer will ignore the bonding requirement. However, *this is not a gap that we can fill with a remedy*—especially in view of the very narrow remedy actually granted by the statute. No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity. It merely gives the district court jurisdiction to hear federal claims that are not otherwise barred.

*Id.* at 1290 (emphasis added). The court went on to also reject a negligence claim under the Federal Tort Claims Act, *id.* at 1290–92, and a claim that the government held a retainage that the subcontractors could make a claim against, *id.* at 1292–93.

The passage of *Arvanis* that Raytheon relies upon cannot be properly considered except in its context. In *Arvanis,* the Seventh Circuit was only considering claims against the United States; it was not considering claims against a prime contractor. There is no language in the statute providing for a cause of action against the United States, but there is language that has been construed as providing for a cause of action against the prime contractor. *See S.C.I.,* 684 F.Supp. at 191. Also, for claims against the prime contractor, it is unnecessary to find a basis for waiving sovereign immunity. The Seventh Circuit was unable to fill any gap in the statute with a remedy against the United States; the Seventh Circuit does not hold there is no possible alternative remedy against the prime contractor. Nevertheless, the remedy provided for in the statute is limited to suing upon the bond. The statute does not provide for any other remedy and, as in *Arvanis,* this

court will not expand the statute beyond its language. Thus, as has already been stated, ¶ 34 and ¶ 35 do not provide a basis for granting relief under the statute. Paragraphs 36 and 37, however, are not claims made pursuant to the statute. It still must be considered whether those claims can be recognized by the common law. *Arvanis* is not instructive on those claims since that case does not consider independent claims against a prime contractor.

In *Strong,* the contract between the prime contractor and government expressly required a payment bond, but the prime contractor failed to obtain a bond. 156 N.E. at 92–93. The New York Court of Appeals held that the Heard Act (the predecessor to the Miller Act) did not apply since there was no bond and instead the common law applied. *Id.* at 93. Since the promise to provide a payment bond was in fulfillment of a legal duty and was intended for the benefit of the providers of labor and material, it was held that the subcontractor could bring a third-party beneficiary claim against the prime contractor. *Id.* at 93–94. *Strong* is distinguishable from the present case because the contract between Raytheon and the FAA had no express contractual provision requiring a payment bond.

In the *Gallaher* case, the Defense Department had, at the request of the prime contractor, expressly waived the requirement of a Miller Act bond. The Seventh Circuit held that the bond requirement was properly waived in accordance with an Executive Order issued pursuant to the War Powers Act and therefore plaintiff's claims were without merit. 226 F.2d at 730–31. This is distinguishable from the present case since Raytheon did not obtain an express waiver from the FAA; instead, at least in the present posture of the case, it must be assumed that the failure to require the bonds was an oversight.

In *Gallaher,* the Seventh Circuit, though, also stated the following:

> Furthermore, we are of the opinion that the district court correctly disposed of the motion to dismiss, even though the War Powers Act be held inapplicable. Plaintiffs insist that the case is con-

trolled by the reasoning in *Strong v. American Fence Const. Co.*, 245 N.Y. 48, 156 N.E. 92. There the contractor promised the Government that it would furnish bonds. However, it failed to do so. The Court of Appeals for New York held not that the plaintiffs had a right to sue upon a bond which had not been given, the contract having been broken in that respect, but that they were entitled to sue the contractor for breach of contract to supply the bond. In other words, the promise having been made for the benefit of the material men, under the venerable doctrine of *Lawrence v. Fox*, 20 N.Y. 268, the beneficiaries had a right to sue as persons for whose benefit the promise had been made. But that is not our case. Here, no promise was broken; no tort committed; no implied agreement on the part of defendant is justified.

*Id.* at 731. This should probably be characterized as *dictum*, but it could be considered an alternative holding. Even if a holding, it should be viewed in light of the fact that the prime contractor in *Gallaher* was expressly told it did not have to provide bonds. Under those circumstances, it cannot be considered to have broken a promise as did the contractor in *Strong* which had expressly promised in the contract to obtain a payment bond. Also, *Gallaher* does not consider the argument made in the present case that the requirements of the Miller Act are incorporated into government contracts by operation of law.

*Ortlip* is similar to *Gallaher*. Again, the government agency had expressly waived the bond requirement and the primary holding of the case was that the subcontractor's claim must fail because a bond was not required. 223 F.Supp. at 894. Quoting the above passage from *Gallaher*, the court indicated that alternatively the subcontractor's claim would fail because there was no contractual promise. *Ortlip*, 223 F.Supp. at 894–95. It is unclear whether this should be considered *dictum* or an alternative holding. In any event, *Ortlip* would not be binding on this court and *Ortlip* does not consider whether the statutory requirement should be considered to

be incorporated into the contract by operation of law.

The existing precedents are understood as holding that, absent a bond being obtained, there is no claim directly under the statute. There can, however, still be a common law third-party beneficiary claim if the federal agency has not expressly waived the bond requirement and a promise to provide a bond exists. The cases, though, do not discuss whether the requirements of the Miller Act should be considered to be incorporated by operation of law into every contract exceeding $25,000 "for the construction, alteration, or repair of any public building or public work of the United States." If, as plaintiffs contend, the bond requirements are automatically incorporated into every such federal contract, then the contract between the FAA and Raytheon did indeed contain a promise to provide a bond that was for the benefit of plaintiffs.

The ordinary rule is that statutory provisions are deemed to be incorporated into contracts. *Norfolk & Western Ry. v. American Train Dispatchers Association*, ── U.S. ──, 111 S.Ct. 1156, 1164, 113 L.Ed.2d 95 (1991); *2 Tudor City Place Associates v. 2 Tudor City Tenants Corp.*, 924 F.2d 1247, 1254 (2d Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 83, 116 L.Ed.2d 56 (1991); *G.L. Christian & Associates v. United States*, 320 F.2d 345, 350–51, 160 Ct.Cl. 58, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963); *National Fidelity Life Insurance Co. v. Karaganis*, 811 F.2d 357, 362 (7th Cir.1987) (Illinois law); *Western Waterproofing Co. v. Springfield Housing Authority*, 669 F.Supp. 901, 903–04 (C.D.Ill.1987) (same).

In *Universities Research Association, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981), the Supreme Court was faced with the question of whether a private right of action existed for employees to bring suits to enforce the prevailing wages provision of the Davis–Bacon Act, 40 U.S.C. §§ 276a *et seq.* In discussing whether a private right of action existed under that statute, the Supreme Court considered whether the provisions of the

Davis–Bacon Act should be considered to be incorporated by operation of law into contracts covered by that Act. The Supreme Court held that they were not. To hold otherwise would "ignore[ ] the fact that the Act does not define the terms 'construction, alteration and/or repair,' 'public buildings or public works,' and 'mechanics and/or laborers.' A number of commentators have noted the difficulty of determining whether particular work constitutes 'construction' within the meaning of the Act,.... Like other contracting agencies, [the Atomic Energy Commission] and its successors have developed detailed guidelines for determining whether particular work is covered by the Act." *Id.* at 783–84, 101 S.Ct. at 1467–68. The Court distinguished the Davis–Bacon Act from statutes that are self-implementing. *Id.* at 784 n. 38, 101 S.Ct. at 1468 n. 38 (distinguishing *G.L. Christian, supra* ).

The Davis–Bacon Act provides that the advertised specifications for federal contracts covered by that Act shall contain a prevailing wage requirement and every contract entered into based on such specifications shall contain a prevailing wages stipulation. 40 U.S.C. § 276a(a); *Coutu,* 450 U.S. at 756–57, 101 S.Ct. at 1454–55. Similar to the Davis–Bacon Act, the Miller Act's provisions as to what contracts are covered contain undefined terms such as "construction, alteration, or repair," and "public building or public work." 40 U.S.C. § 270a(a). Also similarly to the Davis–Bacon Act, the Miller Act provides that before awarding a contract covered by the Act, the bidder shall furnish the required bonds, which shall become binding upon the award of the contract to that bidder. 40 U.S.C. § 270a(a). Like the Davis–Bacon Act, the Miller Act is not self-implementing; under the statute, its requirements are not incorporated into the contract until the bond is provided. Absent an express contractual provision or possibly an express bidding requirement, the only promise to provide the bond is the act of furnishing a bond to the government prior to the award of the contract, not the implicit incorporation of the statutory provision into any federal contract covered by the Act.

No promise to provide a payment bond was contained in the Raytheon–FAA contract absent an express provision to that effect. Since no such provision was in the contract, plaintiffs cannot succeed on their ¶ 37 third-party beneficiary claim.

Plaintiffs make no argument in support of their ¶ 36 estoppel claim. Lacking any supporting argument, that subclaim will also be dismissed.

Without stating any particular cause of action, plaintiffs generally argue that a sub-subcontractor should be able to rely on assuming the parties above it have obtained the statutorily required bonds and that any loss resulting from failure to obtain the bonds should fall on the party that failed to comply with the law. But knowing that there can be no liens on federal property, sub-subcontractors can readily protect themselves by requiring proof of the existence of a bond (or at least by inquiring as to whether a bond has been expressly required, which itself would provide a third-party beneficiary cause of action). Also, the sub-subcontractor is not necessarily left with no recourse whatsoever. The sub-subcontractor may still have a common law claim existing independent of the Miller Act.

IT IS THEREFORE ORDERED that defendant Raytheon Service Company's motion for summary judgment is granted in part and denied in part. Count VII of plaintiff's complaint is dismissed with prejudice. The motion for summary judgment is denied as to Counts VIII and IX.