Felix **RIVERA DE LEON** d/b/a Bay Rats Underwater Plaintiffs

v.

**MAXON ENGINEERING SERVICES, INC., et al Defendants**

No. CIV. 00–2350(SEC).

United States District Court, D. Puerto Rico.

Sept. 19, 2003.

Vilma M. Dapena–Rodriguez, Esq., Bayamón, for Plaintiffs.

David P. Freedman, O'Neill & Borges, Raúl González–Toro, Esq., San Juan, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

The Court has before it Defendants' motion to dismiss seeking dismissal of the Miller Act claim for lack of subject matter jurisdiction, and dismissal of the breach of contract cause of action for failure to state a claim. (**Docket # 57**). Upon careful review of the matter before us, the parties' arguments and the Magistrate Judge's Report and Recommendation, the Court concludes that Defendants' Motion to Dismiss must be **GRANTED in part** and **DENIED in part.**

### Factual Background

Plaintiff filed the present action on October 19, 2000, seeking judgment ordering Defendants to fulfill their contractual obligations, and awarding him compensatory damages for alleged breach of contract, costs and reasonable attorney's fees. On February 20, 2001, Plaintiff filed an amended complaint, under the Miller Act, 40 U.S.C. § 270a–270e, seeking recovery of a surety bond (payment bond) due to al-

leged failure of payment and breach of contract. Pursuant to 28 U.S.C. § 1367(a), the supplemental jurisdiction statute, Plaintiff also brought claims under the Commonwealth's tort and breach of contract statutes. Plaintiff alleges that he is a second-tier subcontractor to a construction services contract entered between the United States of America and, a joint venture, composed of Perini Jones, Inc. and Perini International ("Perini"). The contract at issue pertains to two construction projects at the U.S. Naval Station in Roosevelt Roads. The construction projects object of the contract involved demolition and underwater construction work at two sites on the Naval Base identified as (1) Bulkhead Charlie and (2) Pier Three. Defendants Perini ("the prime contractor") proceeded to subcontract the services of Maxon Engineering Services, Inc. ("first tier subcontractor"), corporation which proceeded to subcontract the services of the Plaintiff ("second tier subcontractor") to perform the construction.

Plaintiff states that during February of 2000, Maxon approached him and requested a bid proposal regarding the Bulkhead Charlie and Pier Three projects for consideration. Plaintiff states that he prepared and submitted said proposals for both projects including a detailed breakdown of payments for expenses incurred for mobilization, materials, labor, equipment, etc. In April of 2000, Maxon approved said proposal and the payment schedule submitted by Plaintiff, and the parties subsequently entered into an oral agreement through which plaintiff became obliged to perform the stipulated repairs and constructions on the two projects, and Maxon was bound to make the agreed payments. Under the terms of the agreement Plaintiff was responsible for furnishing the materials and equipment for the projects. Additionally, furnished Maxon with a photo analysis of the projects, and an invoice of the materials and equipment required in order to begin work. The parties allegedly agreed to estimate the construction costs and Plaintiffs service fee at $ 186,000.00 for the Bulkhead Charlie project, and $ 240,000.00 for the Pier Three project.

Plaintiff alleges that once the service agreement was reached, Maxon required that Plaintiff have his employees on the project site within twenty four (24) hours. Plaintiff states that he requested Maxon provide a written contract of the agreement, and that Maxon allegedly "promised and represented" that it would provide said document along with an initial payment. On April 17, 2000, Plaintiff began pre-construction excavation and demolishing at the Bulkhead Charlie project site. After several weeks of working at the site, Plaintiff submitted a bill statement to Maxon for payment. Maxon failed to render payment.

In May of 2000, Perini Jones allegedly required that Plaintiff discontinue his original demolition plan at Bulkhead Charlie in order to excavate and locate tie rods. According to Plaintiff, said request entailed work not comprised in the service agreement. In response to the request, Plaintiff informed Maxon that the additional work represented a change order, and thus an adjustment of payment was necessary. Maxon allegedly agreed to pay the additional charges, proffering that payment would be made on May 9, 2000. Maxon failed to render payment.

On June 12, 2000, Maxon informed Plaintiff that his services were being terminated. Plaintiff alleges that he had complied with his obligations under the agreement entered with Maxon in April of 2000. Said termination prevented Plaintiff from completing construction at the Bulkhead Charlie project, and also prevented

him from commencing work on the Pier Three project. Neither Maxon nor Perini Jones have rendered any payment to Plaintiff for works performed. Plaintiff argues that he provided the Co-defendants with proper notice of failure to make payments.

Plaintiff also argues that both the unjustified termination and Co-defendants' failure to remunerate him for work previously performed constitute a breach of contract. Plaintiff asserts that both Co-defendants, Perini and Maxon, jointly and intentionally, made misrepresentations aimed at leading him to agree to provide his services at the two projects. Plaintiff adds that Maxon's sole intention in contracting his services was to protect its interests in the subcontract with Perini, not to contract a reliable party to complete the repairs and constructions at the two projects, as was represented. Additionally, Plaintiff states that, once Maxon felt that its subcontract with Perini was stable, it terminated Plaintiff's contract. Thus, Plaintiff argues that both Maxon and Perini Jones are responsible for the breach of contract.

On February 20, 2001, Defendants Perini Jones, Inc. and Perini International filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (**Docket # 16**). On March 12, 2001, Defendants filed a memorandum of law in support of their motion to dismiss (**Docket # 18**). On April 16, 2001, Plaintiff filed an opposition to Defendants' motion to dismiss (**Docket # 23**). On May 21, 2001, Defendants filed a reply to Plaintiffs' opposition (**Docket # 27**). On June 22, 2001 and July 6, 2001, respectively, Plaintiff filed a sur reply and a supplemental sur reply to the Defendants' reply to Plaintiffs opposition to Defendants' motion to dismiss (**Docket ##39 and 44**). On August 22, 2001, the Court entered an Order denying without prejudice Defendants' motion to dismiss (**Docket # 16**), and granted Plaintiff thirty (30) days to conduct limited discovery regarding the issue of waiver of the surety bond required under the Miller Act (**Docket ##47 and 48**).

On March 26, 2002, Defendants Perini Jones, Inc. and Perini International filed a renewed motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, accompanied by a memorandum of law in support of said motion (**Docket # 57**). On April 24, 2002, Plaintiff filed a memorandum in support of the application of the federal enclave jurisdiction doctrine (**Docket # 62**). On May 17, 2002, Defendants filed a memorandum in opposition to the exercise of federal enclave jurisdiction (**Docket # 67**). The matter was referred for report and recommendation on January 28, 2003 (**Docket # 69**). On March 7, 2003, Magistrate Judge Gustavo A. Gelpí issued his report recommending that Defendants' motion to dismiss be granted as to Defendants' argument regarding lack of subject matter jurisdiction under the Miller Act and denied as to defendants' argument regarding failure to state a claim. Furthermore, the Magistrate recommended that the Court retain federal question jurisdiction over Plaintiff's claims under Commonwealth laws under the federal enclave doctrine. Finally, the Magistrate also recommended that the Court not invoke the abstention doctrine despite the existence of concurrent jurisdiction with the Commonwealth courts (**Docket # 70**). Both Defendants have filed objections to the Magistrate's report (**Docket ##72 & 73**) and Plaintiff has filed an opposition to said objections (**Docket # 77**). In addition, Defendant Perini has filed a reply to Plaintiff's opposition (**Docket # 78**).

**Standard of Review—Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

The scope of review of a Magistrate's recommendation is set forth in 28 U.S.C.

636(b)(1)(C). This section provides that "[a] judge of the [district] court shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which [an] objection is made." *Id.* However, no review is required of those issues to which objections are not timely raised. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Borden v. Secretary of Health,* 836 F.2d 4, 6 (1st Cir.1987). In fact, a party who fails to file any objections to the Magistrate Judge's Report and Recommendation within ten days of its filing waives his or her right to appeal from this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994). *See also* Rule 510(2) of the Local Rules for the District of Puerto Rico. In the instant case, both parties have filed timely objections to the Magistrate Judge's Report and Recommendation, and thus we will proceed to review it.

█ In general terms, a defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). In this type of jurisdictional challenge, "the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff." *Pejepscot Indus. Park v. Maine Cent. R.R.,* 215 F.3d 195, 197 (1st Cir.2000); *Freiburger v. Emery Air Charter, Inc.,* 795 F.Supp. 253, 257 (N.D.Ill., 1992). *See also Hart v. Mazur,* 903 F.Supp. 277 (D.R.I.1995) ("Motions under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review.") Once the issue has been raised, the plaintiff has the burden of demonstrating the existence of the Court's jurisdiction. *Puerto Rico Tel. Co. v. Telecom.*

*Regulatory Bd.,* 189 F.3d 1, 7 (1st Cir. 1999).

Under Rule 12(b)(1), the defendant may assert that the Court lacks subject matter jurisdiction to entertain a cause of action. In fact, "the district court must determine questions of subject matter jurisdiction first, before determining the merits of the case." James Wm. Moore et. al., *Moore's Federal Practice* ¶ 12–35, § 12.30 (3d ed.1999). "As the First Circuit Court of Appeals has cogently stated, 'federal courts are not at liberty to overlook limitations on their subject matter jurisdiction.' " *Cirino v. United States,* 210 F.Supp.2d 46, 50 (D.P.R.2002) (*citing A.M. Francis v. Goodman,* 81 F.3d 5,8 (1st Cir.1996)). Therefore, "if the Court determines that subject matter jurisdiction does not exist, it must dismiss the case and not make any determinations on the merits of the same." *Id.*

Challenges to subject matter jurisdiction through a Rule 1 2(b)(1) motion to dismiss come in two different forms: sufficiency challenges and factual challenges. *See Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir.2001). Under a sufficiency challenge, the Court "accepts plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject matter jurisdiction." *Id.* In making said determination, the court "must credit the plaintiff's well-pleaded factual allegations ..., draw all reasonable inferences from them in [the plaintiff's] favor, and dispose of the challenge accordingly." *Id.*

Under a factual challenge, the defendant controverts "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position." *Id.* This type of challenge,

unlike a motion for summary judgment, "permits (indeed, demands) differential fact finding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* In making a determination on a factual challenge, "the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.*

"While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion, such as the one in this case." *González v. United States,* 284 F.3d 281, 288 (1st Cir.2002). The present motion to dismiss for lack of jurisdiction of Plaintiff's Miller Act claim entails a factual challenge.

As previously mentioned, Defendants also seek dismissal of Plaintiff's causes of action for failure to state a claim. In assessing whether dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martínez v. Arrillaga–Beléndez,* 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) *citing Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993). Yet courts must bear in mind that apart from allegations of civil rights or RICO violations, fraud, mistake or standing, which are not implicated here, "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir. 2000) (quoting *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (internal quotation. marks omitted)). In so doing, "a plaintiff can make allegations either on the basis of

personal knowledge or on 'information and belief.'" *Id.*

## Applicable Law and Analysis

Defendants seek dismissal of Plaintiff's Miller Act and state law claims. Defendants raise two main arguments regarding dismissal. First, they argue that the Court lacks subject matter jurisdiction because Plaintiff fails to raise a cognizable Miller Act claim. Additionally, Defendants aver that, if the Court determines that dismissal of the Plaintiff's Miller Act claim is proper, it should also decline to exercise supplemental jurisdiction over the Plaintiff's Commonwealth law claims. Second, and in the alternative, Defendants argue that, if the Court determines that Plaintiff indeed raises a cognizable claim under the Miller Act, thus retaining federal question jurisdiction, the Court should dismiss the Plaintiff's Miller Act claim and Commonwealth law claims for failure to state a claim. However, Plaintiff retorts, that if the Court determines that dismissal of his Miller Act claim is warranted, the Court still retains federal question jurisdiction over his tort and breach of contract claims because they entail federal common law issues under the doctrine of "federal enclave jurisdiction."

## Miller Act Claim

Defendants argue that the Court lacks subject matter jurisdiction because Plaintiff failed to raise a cognizable Miller Act claim. Defendants specifically argue that Plaintiff's Miller Act claim is flawed for two reasons. First, because no payment bond exists in this case since the Navy waived the requirement under 40 U.S.C. § 270e. Second, because Plaintiff failed to provide proper written notice to the contractor (Perini) within ninety (90) days from the date on which the last work was performed, as required under 40 U.S.C. § 270(b)(a).

The Miller Act, 40 U.S.C. § 270b, provides a federal cause of action, for persons supplying labor and materials, upon a payment bond secured by the principal contractor of a federal government project.[1] The Act "requires a general contractor performing a contract valued at any public construction project to obtain a performance bond for the protection of persons supplying labor and materials in the prosecution of work on the project." *GE Supply v. C & G Enterprises*, 212 F.3d 14, 17 (1st Cir.2000)(*quoting United States for Use of Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 31 (1st Cir.1997)). Any person who has provided "labor or materials" in the prosecution of a public project may sue to recover from the payment bond, furnished under sections 270a to 270d–1 of the Act, any amount owed to them. 40 U.S.C. § 270b(a).

■ The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to construction of non-federal buildings." *United States for Use of Wa-*

1. "On a private construction project, mechanic's and material men's liens secure payment of the subcontractors. Such devices are obviously unavailable on a government project; sovereign immunity bars liens against government property. Equally obvious, potential subcontractors would be very reluctant to participate if they had nothing better than the status of a general creditor of the prime contractor to secure payment. The answer to this problem was the Miller Act, 40 U.S.C. § 270a–270d (as amended). Section 270a provides that the prime contractor must post a payment bond to guarantee payment of the subcontractor. Section 270b provides that if not paid, the subcontractor may sue on the bond in federal district court." *Arvanis v. Noslo Engineering Consultants, Inc.*, 739 F.2d 1287, 1288–1289 (7th Cir.1984).

*ter Works Supply Corp.*, 131 F.3d at 31 (*quoting United States on benefit and on behalf of Sherman v. Carter*, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957)). "The Act is 'highly remedial' and entitled to a 'liberal construction.'" *GE Supply*, 212 F.3d at 17. Additionally, the "Act provides that only a person with a 'direct contractual relationship' with either a general contractor or a fist-tier subcontractor of the general contract may recover from the bond. 40 U.S.C. § 270b(a)." *GE Supply ex rel. v. G&C Enterprises*, 29 F.Supp.2d 49, 52 (D.P.R.1998). If the claimant's relationship to the general contractor is more remote than second-tier subcontractor, it cannot recover on the payment bond. *Id.* (*citing J.W. Bateson Co. v. United States ex. rel. Bd. of Trustee of the Nat'l Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 590–591, 98 S.Ct. 873, 55 L.Ed.2d 50, (1978)).

Defendants argue that Plaintiffs Miller Act claim is flawed because no recoverable payment bond was issued in this case since the Navy waived the requirement under 40 U.S.C. § 270e. Defendants have proffered a number of relevant exhibits as evidence in support of their waiver argument.[2] *See* **Docket # 27, Exh. 2 and Docket # 57, Exhs. A and D.** Thus, Defendants aver that in the absence of a recoverable payment bond, a party seeking recovery cannot sustain a claim under the Act.

Defendants state that the Navy waived the bond requirement as to the Construction Capabilities Contract (Contract No. N62470–95–D–503 0) entered between them. They specifically state that clause H–16 of the Contract grants waiver. As evidence of said waiver they present the sworn declaration of Mr. David A. Lamoureux, the Contracting Officer for the United States Navy, Atlantic Division, who participated in negotiating the contract. He states:

> "[b]y Clause H–16 of the Perini Contract, the Navy waived the bond requirement that would have been applicable to Perini Jones. This clause is the only provision in the Perini Contract dealing with waiver of bonding requirements. Clause H–16 has at all times remained in effect, and has not been amended." **(Docket # 57, Exh. A)**

Defendants have also presented an excerpt, regarding the bond waiver, from the transcript of the deposition of Mr. Harold Edward Johnson, former Site Controller for Perini Jones. *See* **Docket # 57, Exh.D.**

■ The Court, having considered the evidence presented by Defendants, concludes that the bond requirement indeed was waived with regards to the primary contract. Thus, because no bond was issued on the primary contract, due to a waiver under section 40 U.S.C. § 270e, the Court consequently lacks subject matter jurisdiction. *See United States for Use of Owens v. Olympic Marine Servs. Inc.*, 827 F.Supp. 1232, 1234 (E.D.Va.1993). "The Miller Act gives federal courts jurisdiction over cases involving government contracts, only if bonds have been given." *Id.* (*citing* 40 U.S.C. § 270b). The reason is that, under the Miller Act, "statutory liability, which in turn is inseparably linked to the statutory remedy, assumes the existence of a bond as an indispensable

---

**2.** Section 270e of the Act provides:

"The Secretary of the Army, the Secretary of the Navy, the Secretary of the Air Force, or the Secretary of Transportation may waive sections 270a to 270d–1 of this title, with respect to cost-plus-a-fixed fee and other cost-type contracts for the construction, alteration, or repair of any public building or public work of the United States... regardless of the terms of such contracts as to payment or title." 40 U.S.C. § 270e.

condition. [If there is no bond], there is neither federal jurisdiction nor any right of action that can rest upon the statute." *Harry F. Ortlip Co. v. Alvey Ferguson Co.*, 223 F.Supp. 893, 895 (E.D.Penn.1963). In sum, in the present case, there is no surety bond on which to sue. Absent the existence of a bond, there can be no claim under the statute. *Faerber Elec. Co. v. Atlanta Tri–Com. Inc.*, 795 F.Supp. 240, 244 (N.D.Ill.1992). This Court, hence, lacks subject matter jurisdiction as to the Miller Act claim. Thus, the Court need not consider the Defendants argument relating to lack of proper notification of claims to the prime contractor.

## Jurisdiction under the Federal Enclave Doctrine

Plaintiff argues, however that even if should the Court determines that it lacks jurisdiction to entertain the Miller Act claim, it still retains federal question jurisdiction over his tort and breach of contract claims because they entail federal common law under the enclave jurisdiction doctrine. The defendants on the other hand, argue that Plaintiffs claims under the Puerto Rico Civil Code are inconsistent with federal law, thus are not federal law. The defendants also argue that, if the Court determines that enclave jurisdiction is present, it should abstain from entertaining the claims because the state courts have concurrent jurisdiction.

"A federal enclave is a portion of land over which the United States government exercises exclusive federal legislative jurisdiction." *Kelly v. Lockheed Martin Servs. Group*, 25 F.Supp.2d 1, 3 (D.P.R.1998). The federal power over enclaves emanates from article I, section 8, clause 17 of the United States Constitution, which grants Congress the power "[to] exercise exclusive legislation in all cases whatsoever," over the District of Columbia, and "to ex-ercise like authority over all places purchased by consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings."

Pursuant to the aforementioned Constitutional clause, "Congress may acquire derivative legislative power from a State...by consensual acquisition of land, or by non-consensual acquisition followed by the State's subsequent cession of legislative authority over the land." *Koren v. Marietta Servs.*, 997 F.Supp. 196, 200 (D.P.R.1998) *quoting Kleppe v. New Mexico*, 426 U.S. 529, 542, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). "In either case, the legislative jurisdiction acquired may range from exclusive federal jurisdiction with no residual state police power [citations omitted] to concurrent, or partial federal legislative." *Id.* Regarding the enclave object of this inquiry, the United States has exclusive federal jurisdiction over the Roosevelt Roads Naval Station. *Kelly v. Lockheed Martin Servs. Group*, 25 F.Supp.2d 1 at 3; *Koren v. Marietta Servs.*, 997 F.Supp. at 201.

We must, thus, determine whether Plaintiff's tort and breach of contract claims are entitled to federal enclave jurisdiction. "Whether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question, resting on such factors as [1] whether the federal government exercises exclusive, concurrent or proprietorial jurisdiction over the property, [2] when the property became a federal enclave and [3] what the state law was at the time, [4] whether the law is consistent with federal policy, and [5] whether it has been altered by national legislation." *Kelly v. Lockheed Martin Servs. Group*, 25 F.Supp.2d at 4 (*quoting Celli v. Shoell*, 40 F.3d 324, 328 n. 8 (10th Cir.1994)).

"There are three theories as to the development of federal enclave law in relation to state law." *Id.* Under the first theory, when an area becomes a federal enclave, the local law in effect at the time of cession continues to apply until it is abrogated by federal law. *See James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 100, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Chicago Rock Island & Pacific RR. v. McGlinn,* 114 U.S. 542, 546, 5 S.Ct. 1005, 29 L.Ed. 270 (1885). In effect, the state law at the time of cession becomes federal law. Only that federal law applies in the enclave unless Congress specifically makes provision for the application of law legislated by Congress. Under this theory, the status quo at the time the federal enclave became an enclave is maintained no matter how much time has passed since the creation of the enclave, unless Congress acts to change the status quo. *Celli,* 40 F.3d at 328 n. 4.

Under the second theory, the *Paul* rule, subsequent state regulatory changes consistent with the state law in place at the time of cession are applicable within a federal enclave. *Paul v. United States,* 371 U.S. 245, 269, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). Thus, the state/federal law is not frozen in time as of cession, but continues to develop as the state develops the law. Under the third theory, all state law rules of the state in which the enclave exists are applicable within the enclave unless they interfere with the federal government's jurisdiction. *See Howard v. Commissioners of the Sinking Fund of the City of Louisville,* 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953). Neither the United States Supreme Court nor the Court of Appeals for the First Circuit has determined which of these regimes applies under the present circumstances.

However, the first and second theories are the "most consistent with the language of the Constitution and federal enclaves jurisdiction," and are the theories which have been successively embraced by this District Court. *Kelly,* 25 F.Supp.2d at 4–5. Thus, the Court shall apply the first two theories to the present case.

The basic theory is that when an area becomes a federal enclave, the local law in effect at the time of the cession continues to apply, in effect becoming federal law, until it is abrogated by subsequent federal legislation. In applying said theory, the Court must make two inquiries. First, when was the land for Roosevelt Roads was acquired? And second, were any of the applicable articles of the Puerto Rico Civil Code in effect at the time the enclave's lands were acquired? Regarding the first inquiry, the Court notes that neither of the parties has presented evidence as to exactly when Roosevelt Roads Naval Station was acquired by the United States. The Court, however, notes that "[d]uring WW II, the navy began construction of the United States Naval Station at Roosevelt Roads." *United States v. Puerto Rico,* 287 F.3d 212, 214 (1st Cir.2002). Specifically, "President Franklin Roosevelt ordered the construction of the facility in 1940. It was completed in 1943 and Roosevelt Roads was commissioned as a U.S. Navy Operations Base."In 1942, the United States expropriated the lands Naval Station Public Affairs Office, *Roosevelt Roads History and Fact,* (March 3, 2003), available at *http://www.navstarr.navy.mil,* for the base. The Court thus concludes that the lands for the base were acquired at some time in the early 1940's.

Regarding the second inquiry, the Court notes that the Puerto Rico Civil Code articles relevant to Plaintiffs claims were originally part of the Spanish Civil Code which came into effect in December 12, 1889. *Torres v. Rubianes,* 20 D.P.R. 337 (1914). On December 10, 1898, the Treaty of Paris

was signed, thus Spain ceded its sovereignty over Puerto Rico to the United States. "On April 12, 1900, Congress enacted the Foraker Act, which provided for the establishment of the island's first civil government." *People v. Koedel*, 927 F.2d 662, 664 (1st Cir.1991). On July 1, 1902, an amended Civil Code, took effect in Puerto Rico. Some years later, on April, 1930, a further amended Civil Code took effect. This is still the law today.

■ The articles pertinent to Plaintiff's claim have remained basically unchanged since 1889. The Court infers that said Commonwealth law claims are brought under articles 1802, 1053, 1054, 1059 and 1060 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141 (state tort statute), 3017 (default; demand of creditor), 3018 (fraud, negligence, or delay fulfilling obligation), 3023 (indemnity for losses and damages), and 3024 (losses and damages for which debtor is liable). It is, thus, apparent that the claims raised by Plaintiff are based on statutes that were in effect decades prior to the United States' acquisition of the Roosevelt Roads lands. Since the state law was in effect prior to the acquisition of the land, it has become, in essence, federal law with respect to this enclave. The Court, hence, concludes that it retains jurisdiction of Plaintiff's Puerto Rico Civil Code claims under the doctrine of enclave jurisdiction.

Defendants argue that the Puerto Rico Civil Code claims raised by Plaintiff did not become federal law because they were inconsistent with the federal remedy established for such instances (Miller Act). In the alternative, they argue that the Court should abstain from considering the matter. Specifically, Defendants point to

article 1489 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 4130[3]. They aver that this disposition is inconsistent with federal law because it grants a cause of action against the owner of the project, (in the present case the United States), and thus controverts the essence of the Miller Act.

However, the Court notes that Plaintiff does not seek a remedy against the United States. The Court further notes that the state law claims brought by Plaintiff are not inconsistent with federal law. *See Consolidated Electricals & Mechanicals. Inc. v. Biggs General Contracting. Inc.*, 167 F.3d 432, 436 (8th Cir.1999) (**holding that "nothing in the Miller Act prevents subcontractors from bringing state law breach of claims against general contractors to recover lost profits"**); *United States for Use of Yonker Constr. Co. v. Western Contracting Corp.*, 935 F.2d 936, 940–42 (8th Cir.1991) (**allowing subcontractor to bring pendent state law damages claim against contractor**).

The Amended Complaint avers a number of facts linking Defendants to Plaintiff's contract with Maxon. At the present stage, in which the Court must make all reasonable inferences in Plaintiff's favor, the Court recognizes that Plaintiff has raised a viable tort claim, and a possible breach of contract claim against Defendants. Thus, the Court concludes that Defendants' motion to dismiss for failure to state a claim must be denied.

Finally, despite the existence of concurrent jurisdiction with the Commonwealth Courts, the Court finds that there is no exceptional circumstance in this case that would prevent the Court from exercising

---

**3.** Article 1489 states, "[t]hose who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought." P.R. Laws Ann. tit. 31 § 4130.

jurisdiction over Plaintiff's claims under the laws and statutes of the Commonwealth of Puerto Rico. A federal court may abstain from exercising concurrent jurisdiction over federal claims only in "exceptional circumstances." *Casa Marie Inc. v. Superior Court*, 988 F.2d 252, 268 n. 19 (1st Cir.1993) (*citing Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

**Conclusion**

For the reasons stated herein, Defendants' request to dismiss Plaintiff's claim under the Miller Act is **GRANTED**. However, Defendants' request to dismiss Plaintiff's claims under the Commonwealth laws and statutes is **DENIED**, and the Court will retain jurisdiction over these claims pursuant to the federal enclave doctrine.

**SO ORDERED.**